# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

ANDREA DUMALA,
an individual,

Case No.: 23-CV-1224

     Plaintiff,

v.

NATIONAL RECOVERY AGENCY
EXPERIAN INFORMATION
SOLUTIONS, INC.,
     Defendants.

_____/

## COMPLAINT

**COMES NOW**, Plaintiff, ANDREA DUMALA (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sues Defendants, NATIONAL RECOVERY AGENCY (hereinafter, "NRS"), EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter, "Experian"), (hereinafter collectively, "Defendants"). In support thereof, Plaintiff states:

## PRELIMINARY STATEMENT

1.    This is an action for damages for violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, the "FCCPA"), the Fair Debt Collection Practices Act, 15 United States Code 1692 and the Fair Credit Reporting Act, 15 United States Code,

Section 1681 *et seq*. (hereinafter, the "FCRA") wherein NRS and its representatives attempted to collect a consumer debt from Plaintiff, a disabled woman, on a medical debt that is more than seven years old,  and negative credit reporting by re-aging the debt in an unlawful attempt to collect the alleged debt from Plaintiff.

2.    Additionally, despite Plaintiff's repeated meritorious disputes of the account's credit reporting, NRS and Experian, continued to report an account balance as past due on Plaintiff's consumer credit reports and failed to notate the accounts as disputed, both to the substantial detriment of Plaintiff's credit rating and in violation of the FCRA.

## JURISDICTION, VENUE & PARTIES

3.    Jurisdiction of this Court arises under 28 United States Code, Section 1331, as well as pursuant to the FCRA, 15 United States Code, Section 1681, *et seq*., and the FDCPA, 15 United States Code 1692k(d).  Supplemental jurisdiction exists for the FCCPA claims pursuant to 28 United States Code, Section 1367.

4.    Defendants are subject to the jurisdiction of this Court as Defendants each regularly transact business in this District and the events described herein occur in this District.

2

5.     Venue is proper in this District as the acts and transactions described herein occur in this District.

6.     At all material times herein, Plaintiff is a natural person residing in Pinellas County, Florida.

7.     At all material times herein, National Recovery Services is a foreign profit corporation existing under the laws of the state of Pennsylvania, with its principal place of business located at 2491 Paxton Street, Harrisburg, PA 17111.

8.     At all material times herein, Experian is a foreign for-profit corporation existing under the laws of the state of Ohio, with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

## GENERAL ALLEGATIONS

9.     At all material times herein, Plaintiff is a "debtor" or "consumer" as defined by Florida Statutes, Section 559.55(8) and 15 United States Code, Section 1681a(c).

10.    At all material times herein, NRS, itself and through its affiliates, regularly attempts to collect debts, including but not limited to, alleged balances due from Plaintiff on a medical debt that is time barred.

11.    At all material times herein, NRS is a "person" subject to Florida Statutes Section 559.72.  *See* Florida Statutes, Section 559.55(3); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

12.    At all material times herein, NRS is also a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

13.    At all material times herein, NRS is a "debt collector" as defined by Florida Statutes, Section 559.55(7) and 15 United States Code, Section 1692a(6).

14.    At all material times herein, NRS uses interstate mail while engaging in a business, the principal purpose of which is the collection of consumer debts.

15.    At all material times herein, NRS attempts to collect a debt, including but not limited to, an alleged balance on the Account.

16.    At all material times herein, NRS is a "consumer collection agency" within the definition established by Florida Statutes, Section

4

559.55(3) in that it is a business entity engaged in the business of soliciting consumer debts for collection or of collecting consumer debts.

17.    At all material times herein, the alleged balance due on the Account is a consumer debt, an obligation resulting from a transaction for goods or services incurred primarily for personal, household, or family use.

18.    At all material times herein, NRS's conduct regarding the Account complained of below—including furnishing the alleged Account information to consumer reporting agencies—qualifies as "communication" as defined by Florida Statutes, Section 559.55(2).

19.    At all material times herein, NRS furnished information concerning the Account to Experian in a knowing attempt to extract and collect payment from Plaintiff on the Account.[1]

20.    NRS furnishes, reports, publishes, and verifies via investigation specific details of consumers' alleged outstanding or delinquent debt accounts to compel or coerce the alleged debtor to either satisfy the alleged balance or

---

[1] *See Arianas v. LVNV Funding*, 2015 WL 404238, Case No. 8:14-cv-01531-T-27-EAJ (M.D. Fla. Jan. 8, 2015) (noting that while furnishing information to a consumer credit bureau *alone* cannot constitute an attempt to collect a debt in violation of the FCCPA as such violation is preempted by the FCRA, a creditor that "knowingly [attempts] to enforce payment on accounts" by reporting the debt to a consumer reporting agency *can* engage in unlawful debt collection in violation of the FCCPA—not preempted by the FCRA—even without any additional collection attempts) (emphasis added); *see also Best v. Bluegreen Corporation*, 2014 WL 6883083, Case No. 14-80929-CIV (S.D. Fla. Dec. 4, 2014); *In re Russell*, 378 B.R. 735, 743 (Bankr. E.D.N.Y. 2007); *Matter of Sommersdorf*, 139 B.R. 700, 701 (Bankr. S.D. Ohio 1991); and *Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993) (a creditor's report of a debt to a consumer reporting agency is a "powerful tool, designed in part to wrench compliance with payment terms from its cardholder").

suffer the consequences of delinquent accounts, such as higher interest rates on consumer loans or complete denial of credit.

21.     At all material times herein, Experian is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Experian disburses such consumer reports to third parties under contract for monetary compensation.

22.     At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

23.     All necessary conditions precedent to the filing of this action occurred, or Defendants waived the same.

## FACTUAL ALLEGATIONS

24.     Plaintiff was involved in a car accident in 2014 and received medical treatment for her injuries from 2014 through 2016.

25.    Eventually Plaintiff was determined to be disabled in 2019 due to her injuries. Several of Plaintiff's medical debts were then forgiven via charity letters.

26.    The debts that NRS is attempting to collect were originally with Tampa Bay Radiology Associates.

27.    Before NRS acquired the Debts, the same Debts were being reported by  Commonwealth Financial ("Commonwealth") and were being inaccurately reported as re-aged Debts.

28.    Plaintiff disputed the Commonwealth debts three times and they were finally removed by Experian.

29.    Plaintiff later checked her Experian reports and discovered that the same debts that originally belonged to Tampa Bay Radiology Associates were being reported by NRS as re-aged debts.

30.    Plaintiff then disputed NRS's credit reporting with Experian via Experian's online portal (hereinafter, the "First Dispute Letter").

31.    On January 2, 2023, Experian responded to Plaintiff's First Dispute Letter indicating that the accounts were "verified and updated", but continued to report the account in the  amounts of $814 and $922, as seriously past due, and opened on October 26, 2022.

32.    On January 19, 2023, Plaintiff sent a debt validation request to NRS. A true and correct copy of the debt validation letter is attached hereto as **Exhibit A.**

33.    NRS never responded to the validation request and continued to report the re-aged debts as opened in October 2022.

34.    On January 19, 2023, Plaintiff again disputed NRS's credit reporting by a letter to Experian (hereinafter, the "Second Dispute Letter"). Please see attached a true and correct copy of Plaintiff's Second Dispute Letter, labeled as **Exhibit B.**

35.    In the Second Dispute Letter, Plaintiff disputed NRS's inaccurate reporting of the Debts, explaining that:

a.    the Debts were incurred between 2014 and 2016;

b.    that the reporting of the Debts were re-aging the old accounts;

c.    that the reporting of the Debts were causing Plaintiff undue stress, anxiety and embarrassment.

36.    Experian communicated Plaintiff's Second Dispute Letter to NRS.

37.    On February 4, 2023,, Experian sent Plaintiff a letter in response to her Second Dispute Letter (hereinafter, "Experian's Second Response") indicating that the accounts were "verified and updated", however, Experian still reported the Debts as past due in the amounts of $814 and $922, and opened as of October 2022.

38.    On March 1, 2023, Plaintiff disputed NRS's credit reporting by a third   letter to Experian (hereinafter, the "Third Dispute Letter").  Please see attached a true and correct copy of Plaintiff's Third Dispute Letter, labeled as **Exhibit C.**

39.    In the Third Dispute Letter, Plaintiff again disputed NRS's inaccurate reporting of the Debts, explaining that:

d.    the Debts were incurred between 2014 and 2016;

e.    that the reporting of the Debts were re-aging the old accounts;

f.    that the reporting of the Debts were causing Plaintiff undue stress, anxiety and embarrassment; and

g.    that Plaintiff had requested validation of the Debts with no response from NRS and therefore the accounts should be deleted.

40.    Experian communicated Plaintiff's Third Dispute Letter to NRS.

41.    On March 15, 2023, Experian sent Plaintiff a letter in response to her Third Dispute Letter (hereinafter, "Experian's Third Response") indicating that the accounts were "verified and updated", however, Experian still reported the Debts as past due in the amounts of $814 and $922, and opened as of October 2022.

42.    To make matters worse, Experian has voluntarily invoked a policy that it would not report medical debts on consumer reports unless the debt was 365 days old effective as of March 31, 2023.

43.    Notwithstanding Experian's policy, Experian continues to report the re-aged Debts on Plaintiff's reports as opened in October 2022, which is less than 365 days old, and in direct contravention of its own policy.

44.    Plaintiff retained Rebbecca Goodall Law, P.A. for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

45.    As a direct result of the debt collection, communicating, and inaccurate reporting of the Account on Plaintiff's credit reports, Plaintiff has been unable to obtain financing to purchase a home and her credit score has decreased by at least 89 pints.

46.     Additionally, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite her dispute efforts, Plaintiff must endure the erroneous and incorrect reporting of the Account, as well as NRS's continued unlawful continued debt collection attempts.

47.     Plaintiff further dealt with the stress and anxiety of feeling hopeless, believing that she would be denied credit as a result of the erroneous and incorrect reporting of the Account, and that Plaintiff would instead pay higher interest rates in the event she could obtain financing.  In fact, Plaintiff suffered additional actual damages in the form of damage to her credit reputation, higher credit costs, other additional costs and fees, and less access to credit.

48.     The FCCPA, Section 559.77, provides for the award of up to $1,000 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against NRS.

49.     The FDCPA, Section 1692k, provides for the award of up to $1,000 statutory damages, actual damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against NRS.

50.     The FCRA, Sections 1681n or 1681o, or both, provide for the award of between $100 up to $1,000 in statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against NRS, Equifax, Experian, and/or TransUnion.

51.     At all material times herein, it would have been possible for Defendants to avoid violating the terms of the FCCPA, FDCPA, and FCRA.

## COUNT ONE:
## UNLAWFUL DEBT COLLECTION PRACTICE—
## VIOLATION OF FLORIDA STATUTES, SECTION 559.72 et. seq.
## (as to NRS)

Plaintiff re-alleges paragraphs one (1) through fifty-one (51) as if fully restated herein and further states as follows:

52.     NRS is subject to, and violated the provisions of, Florida Statutes, Section 559.72(7) by collecting consumer debts from Plaintiff through means which can reasonably be expected to abuse or harass Plaintiff.

53.      NRS is subject to, and violated the provisions of, Florida Statues, Section 559.72(9), by attempting to collect the Synchrony Accounts with knowledge that the alleged debt is not legitimate or by asserting the existence of some legal right when Synchrony knows that the right does not exist.

54.    NRS is subject to, and violated the provisions of, Florida Statues, Section 559.72(10), by attempting to collect the Debts via letter to Plaintiff which gave the appearance of NRS being authorized to collect consumer debt in the State of Florida.

55.    Specifically, despite Plaintiff's letters and calls disputing NRS's collection attempts, in which Plaintiff explained that the debt was more than seven years old and was not incurred in October 2022, NRS continuously made attempts to collect the debt by sending letters indicating there was a debt owed, demanding that Plaintiff pay the debt, and failing to advise the Plaintiff that any payment or promise to pay would renew the statute of limitations.

56.    NRS further possessed actual knowledge of Plaintiff's disputes of the age and amount of the Debts, failing to respond to Plaintiff's validation attempts, and continuing attempts to collect the Debts through letters and by reporting the  Debts as opened as of October 2022 with balances past due of $814 and $922.

57.    In response to Plaintiff's disputes, NRS reported the results of its reinvestigations of the NRS Accounts to Plaintiff, indirectly via the credit bureaus, conveying information to Plaintiff in an attempt to collect the NRS Accounts from Plaintiff.

58.     NRS's conduct served no purpose other than to annoy and harass Plaintiff into paying the NRS Accounts, as the lack of any response to Plaintiff's request for validation shows that NRS does not have the ability to collect upon the debt and/or cannot verify the amounts due on the Debts, and continued to directly contact Plaintiff in its attempt to collect the NRS Accounts.

59.     Additionally, upon review of the Division of Corporations it was apparent that NRS registered with the state of Florida as a Foreign Profit corporation as of June 2004, however, the registration lapsed for failure to file an annual report in September 2007 and there have been no subsequent registrations for NRS.

60.     In sum, during the course of NRS's attempts to collect the Debts, it knowingly and falsely asserted that the Debts were legitimate, and falsely asserted that it possessed the right to collect the Debts from Plaintiff by reporting the Debts on Plaintiff's credit reports.

61.     NRS's willful and flagrant violation of, *inter alia*, the Florida Consumer Collection Practices Act as a means to collect the NRS Accounts constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Section 559.72(7).

14

62.    As a direct and proximate result of NRS's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT TWO:**
**FAIR DEBT COLLECTION PRACTICES ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTIONS 1692d**
**(as to NRS)**

Plaintiff re-alleges paragraphs one (1) through fifty-one (51) as if fully restated herein and further states as follows:

63.    NRS is subject to, and violated the provisions of, 15 United States Code, Section 1692d, by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the re-aged Debts.

64.    Specifically, Plaintiff repeatedly advised NRS, and its predecessor Commonwealth, that the debts were more than seven years old, that Plaintiff was disabled, and that nothing was owed. Plaintiff further requested that NRS validate the Debts and NRS failed to respond.

65.    Despite Plaintiff's dispute of NRS's credit reporting of the Debts on Plaintiff's credit reports, and despite NRS's actual knowledge that it could not prove the dates of service or the alleged amounts owed by Plaintiff NRS continued to send dunning letters to Plaintiff without the

proper disclosures that any payment or promise of payment would restart the statute of limitations, and NRS reported the Debts as "in collection", opened as of October 20222, and past due in the amounts of $814 and $922 in an attempt to collect the Debts from Plaintiff.

66.    NRS's conduct served no purpose other than to harass, abuse, or oppress Plaintiff into paying the Debts, as NRS knew or should have known that Plaintiff was not obligated to pay the debt yet continued its collection attempts through repeated dunning letters and negative credit reporting.

67.    As a direct and proximate result of NRS's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

## COUNT THREE:
## FAIR DEBT COLLECTION PRACTICES ACT –
## VIOLATION OF 15 UNITED STATES CODE, SECTIONS 1692e, e(2)(A), and e(10) (as to NRS)

Plaintiff re-alleges paragraphs one (1) through fifty-one (51) as if fully restated herein and further states as follows:

68.    NRS is subject to, and violated the provisions of, 15 United States Code, Section 1692e, e(2)(A), and e(10), by using false representations and deceptive means in attempting to collect the Debts,

including by falsely representing the amount, legal status or character of the debt.

69.    Specifically, Plaintiff, through her disputes to Experian, advised NRS that the Debt was not opened in October 2022 and that the Debts were more than seven years old and requested proof of the age and amount of the Debts, which NRS failed or refused to produce.

70.    Further, NRS did not even attempt to provide the disclaimer that the debt was time-barred.  The communication was false, deceptive or misleading because: (a) they failed to foreclose the possibility that Defendant could not sue on the debt; (b) they did not specify who could or could not sue; and (c) they did not specify who may or may not credit report the defaulted debts. Thus, Defendant's form debt collection letters violated § 1692e of the FDCPA.

71.    Additionally, Defendant engaged in false, deceptive or misleafding conduct by attempting to collect the Debts from Plaintiff while not licensed as required by Florida law, Florida Statutes, Section 559.553.

72.    Defendant's false and misleading statements are material. They would lead a consumer to believe that they had to pay this debt to avoid being sued, credit reported, or having to pay the full amount at some point in

the future

73.    As a direct and proximate result of NRS's actions, Plaintiff

sustained damages as defined by 15 United States Code, Section 1692k.

**COUNT FOUR:**
**FAIR DEBT COLLECTION PRACTICES ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTIONS 1692f and**
**f(1) (as to NRS)**

Plaintiff re-alleges paragraphs one (1) through fifty-one (51) as if fully

restated herein and further states as follows:

74.    NRS is subject to, and violated the provisions of, 15 United

States  Code, Section 1692f and f(1), by using unfair or unconscionable

means to collect the Debts.

75.    NRS, by attempting to collect a time barred debt without even

attempting to provide a disclaimer that such debts were time barred, used an

unfair or unconscionable means to collect a debt in violation of § 1692f

because: (a) they failed to foreclose the possibility that Defendant could not

sue on the debt; (b) they did not specify who could or could not sue;  and (c)

they did not specify who may or may not credit report the defaulted debts.

76.    These are materially unfair and unconscionable means that

would lead any consumer to believe that they had to pay this debt to avoid

being sued or being credit reported.  See *Lox,* 689 F.3d at 826.

77.    Defendant's violations of § 1692f of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See 15 U.S.C. § 1692k.

## COUNT FIVE:
## FAIR CREDIT REPORTING ACT –
## VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)
## (As to Experian)

Plaintiff re-alleges paragraphs one (1) through fifty-one (51) as if fully restated herein and further states as follows:

78.    Experian is subject to, and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

79.    Experian willfully or negligently failed, or both, to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding Plaintiff's Accounts.

80.    Specifically, despite the First Dispute Letter in which Plaintiff directly informed Experian that the Debts were being reaged via Experian's own online dispute portal.

81.    Notwithstanding, Experian continued to report the Accounts as seriously past due in the  amounts of $814 and $922, and opened on October 26, 2022.

82.    Further, Experian willfully or negligently failed, or both, to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when reinvestigating Plaintiff's disputes of the above-referenced inaccuracies contained in Plaintiff's credit reports given that Experian previously removed the Accounts when they were listed with a different debt collector in the same amounts.

83.    Specifically, despite the Second Dispute Letter in which Plaintiff specifically sent a letter to Experian explaining that the reporting of the Debts were inaccurate because the Accounts were being re-aged, Experian continued to report the Accounts as past due in the amounts of $814 and $922, and opened as of October 2022, which keeps Plaintiff's credit score unreasonably low or continues to cause her credit score to fall.

84.    Such reporting of the Accounts is false, short-sighted and evidences Experian's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

85.    As a result of Experian's conduct, actions, and inactions, Plaintiff incurred higher interest rates and less favorable terms on consumer loans and other consumer transactions and was denied access to her credit.

86.    Experian's conduct was a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

87.    Experian's individual violations of 15 United States Code, Section 1681e(b), constitute negligent or willful noncompliance—or both— with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT SIX:**
**FAIR CREDIT REPORTING ACT—**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(1)**
**(as to Experian)**

Plaintiff re-alleges paragraphs one (1) through fifty-one (51) as if fully restated herein and further states as follows:

88.    Experian is subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(1), by failing to conduct reasonable reinvestigations of Plaintiff's disputes to determine whether the disputed

information was inaccurate and by failing to subsequently update the information in Plaintiff's credit reports and credit file.

89.    Specifically, Experian willfully or negligently refused, or both, to properly reinvestigate Plaintiff's consumer report upon receiving Plaintiff's disputes, as described herein.

90.    For example, despite receiving Plaintiff's First Dispute Letter, via Experian's own online portal, Experian's reinvestigations were not conducted in such a way as to assure the maximum possible accuracy of the Accounts on Plaintiff's credit reports.

91.    As noted above, Experian did independently verify with NRS whether the Debt and Plaintiff's corresponding liability was valid.

92.    Furthermore, Experian continuously reported the Account as past due in the amounts of $814 and $922, and opened as of October 2022.

93.    Despite receiving Plaintiff's Second Dispute Letter, Experian's reinvestigations were also not reasonably conducted in such a way as to assure the maximum possible accuracy of the Account on Plaintiff's credit reports.

94.    For example, Experian continued to report the Debt associated with the Account as past due in the amounts of $814 and $922, and opened as of October 2022.

22

95.     Despite receiving Plaintiff's Third Dispute Letter, Experian's reinvestigations were also not reasonably conducted in such a way as to assure the maximum possible accuracy of the Accounts on Plaintiff's credit reports as the reporting of the Accounts remained unchanged and did not even reference Plaintiff's dispute.

96.     Such credit reporting is false and evidences Experian's failure to conduct a reasonable reinvestigation of Plaintiff's disputes regarding the Account.

97.     Experian's reinvestigations of Plaintiff's disputes were not conducted reasonably.

98.     Experian's reinvestigations of Plaintiff's disputes were not conducted in good faith.

99.     Experian's reinvestigation procedures are unreasonable.

100.    Experian's reinvestigations of Plaintiff's disputes were not conducted using all information reasonably available to the CRAs.

101.    Experian's reinvestigations were *per se* deficient by reason of these failures in the CRAs' reinvestigations of Plaintiff and the Account.

102.    Experian's actions in violation of 15 United States Code, Section 1681i(a)(1), constitute negligent or willful noncompliance—or both—with

the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT SEVEN:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(4)**
**(as to Experian)**

Plaintiff re-alleges paragraphs one (1) through fifty-one (51) as if fully restated herein and further states as follows:

103.   Experian are each subject to, and violated the provisions of, 15 United states Code, Section 1681i(a)(4), by failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments.

104.   Specifically, despite receiving Plaintiff's First Dispute Letter, via Experian's own online portal, Experian's reinvestigations were not conducted in such a way as to assure the maximum possible accuracy of the Accounts on Plaintiff's credit reports as Experian continued to report the accounts past due in the amounts of $814 and $922, and opened as of October 2022.

105.   Despite receiving Plaintiff's Second wherein Plaintiff advised Experian that she requested validation of the Debts, Experian failed to review and consider all information received in Plaintiff's disputes.

106.   Further, despite receiving Plaintiff's Third Dispute Letter wherein Plaintiff advised Experian that NRS failed to respond to her request for validation of the Debts, Experian willfully or negligently failed, or both, to review and consider all information received in Plaintiff's disputes.

107.   Experian's failure to review and consider all information received in Plaintiff's dispute, including all relevant attachments, was done in bad faith.

108.   Experian's actions in violation of 15 United States Code, Section 1681i(a)(4), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT EIGHT:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(5)**
**(As to Experian)**

Plaintiff re-alleges paragraphs one (1) through fifty-one (51) as if fully restated herein and further states as follows:

109.   Experian is subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(5), by failing to update or delete any information that was the subject of Plaintiff's disputes as inaccurate or that

could not be verified.

110.    Specifically, despite receiving Plaintiff's First Dispute Letter via Experian's online portal, in which Plaintiff directly informed  Experian that the Debts were being re-aged and were past the statute of limitations, Experian failed to update or delete information on Plaintiff's credit reports with respect to the Accounts that was either inaccurate or could not be verified.

111.    Despite receiving Plaintiff's Second Dispute Letter, which advised Experian that Plaintiff requested validation of the Debts, Experian willfully or negligently, or both, failed to update or delete the information on Plaintiff's credit reports with respect to the Debt associated with the Accounts, namely that it was either inaccurate or could not be verified.

112.    Further, despite receiving Plaintiff's Third Dispute Letter, which advised Experian that NRS failed to validate the debt or respond to the validation request, Experian willfully or negligently, or both, failed to update or delete the information on Plaintiff's credit reports with respect to the Debt associated with the Accounts, namely that it was either inaccurate or could not be verified.

113. As a direct result of  Experian's conduct, actions, and/or inactions, Plaintiff sustained damages to her credit and loss of access to credit,

as well as the collecting of a Debt that knowingly re-aged after the statute of limitations.

114.   Experian's conduct was a direct and proximate cause of, as well as a substantial factor in, Plaintiff's serious injuries, damages, and harm as more fully stated herein.

115.   Experian's actions in violation of 15 United States Code, Section 1681i(a)(5), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT NINE:**
**FAIR CREDIT REPORTING ACT –**
**<u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)</u>**
**<u>(as to NRS)</u>**

Plaintiff re-alleges paragraphs one (1) through fifty-one (51) as if fully restated herein and further states as follows:

116.   NRS is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully or negligently publishing or furnishing—or both—inaccurate Account information within Plaintiff's credit reports, failing to fully and properly investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to

correctly report the Accounts on Plaintiff's credit reports after investigating Plaintiff's disputes.

117.   As described above, despite receiving notice of Plaintiff's disputes from Plaintiff as well as from Experian, NRS willfully or negligently reported—or both—erroneous credit information regarding the Account to the TransUnion, Equifax, and Experian.

118.   Specifically, after receiving notice of Plaintiff's repeated disputes from Experian, NRS inaccurately reported the Accounts as past due, opened in October 2022, and with balances owed of $814 and $922, which ultimately reflected negatively on Plaintiff's credit reports and credit file.

119.   Additionally, NRS violated the FCRA, Section 1681s-2(b)'s, "completeness" requirement by failing to notate in its reporting to Experian that the Accounts were disputed by Plaintiff.

120.   Further, NRS reported the immediately-aforementioned negative Account information with actual knowledge that the Debts associated with the Accounts were past the statute of limitations and re-aged the Debts to conceal this fact.

121.   NRS's investigations were not conducted in good faith.

122.   NRS's investigations were not conducted reasonably.

123.    NRS's investigations were not conducted using all information reasonably available to NRS.

124.    As a result of NRS's conduct, actions, or inactions, Plaintiff was damaged, suffering injury to her credit and reputation, credit score, and a loss of access to credit, all as a result of reporting and collecting a Debt associated with the Accounts were past the statute of limitations and were being re-aged for credit reporting purposes.

125.    NRS's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

126.    NRS's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitle Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## **PRAYER FOR RELIEF**

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a.    Judgment against NRS declaring that NRS violated the

FCCPA, the FCRA, and the FDCPA;

b.      Judgment against NRS for maximum statutory damages for the violations of the FCCPA, FCRA, and FDCPA;

c.      Judgment against NRS enjoining them from engaging in further conduct in violation of the FCCPA;

d.

e.      Judgment enjoining Defendants from engaging in further conduct in violation of the FCCPA;

f.      Actual damages in an amount to be determined at trial;

g.      Compensatory damages in an amount to be determined at trial;

h.      Punitive damages  the FCCPA and FCRA in an amount to be determined at trial;

i.      An award of attorneys' fees and costs; and

j.      Any other such relief the Court may deem proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues triable by right.

## **SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE**

Plaintiff hereby gives notice to Defendants and demands that

Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

REBBECCA GOODALL LAW, PA

/s/ Rebbecca A. Goodall
Rebbecca A. Goodall, Esq.
Florida Bar No.:  0115344
rgoodall.law@gmail.com
P.O. Box 1304
Elfers, FL 34680
(813) 438-3695
Attorney for Plaintiff